

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IDRIS PAYNE, RASFA RAMSAY, and : 14 Civ. ____
PETER VLASTARAS,
: **COMPLAINT**
               Plaintiffs,
: **Jury Trial Demanded**
  -against-
:
THE CITY OF NEW YORK, PATRICK
AGOBABE, SERGEANT KAHN, and :
JOHN DOE Nos. 1 through 10 (whose identities
are currently unknown but who are known :
to have been police officers and/or supervisors
with the New York City Police Department), :

               Defendants. :

------------------------------------------------------------X

      Plaintiffs IDRIS PAYNE, RASFA RAMSAY, and PETER VLASTARAS (collectively, "Plaintiffs"), by their attorneys, the LAW OFFICES OF JOEL B. RUDIN and KLIEGERMAN & JOSEPH LLP, complaining of the Defendants, respectfully allege, upon information and belief, as follows:

## NATURE OF ACTION

    1.    This is a civil action, pursuant to 42 U.S.C. §§ 1983 and 1988, and state law, seeking monetary damages for Plaintiffs IDRIS PAYNE, RASFA RAMSAY, and PETER VLASTARAS for their false arrest.

    2.    On Christmas night, 2012, Defendants AGOBABE, KAHN and JOHN DOE Nos. 1-10 (collectively, the "Police Defendants") arrested Plaintiffs on robbery charges, and detained them for nearly 24 hours, knowing they were innocent. They did so because AGOBABE admittedly wanted to earn overtime. The other Defendants, including AGOBABE's supervisor,

Defendant KAHN, aided and abetted AGOBABE in his egregious misbehavior.

## JURISDICTION AND VENUE

3. This action arises under 42 U.S.C. §§ 1983 and 1988, and under the common law of the State of New York.

4. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343, and by the principles of pendent jurisdiction.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6. This action has been commenced within one year and ninety days of the accrual of Plaintiffs' causes of action.

7. On or about March 12, 2013, Plaintiffs served the City of New York timely notice of the present claims pursuant to New York General Municipal Law § 50-c.

8. Plaintiffs Payne and Vlastaras attended oral examinations pursuant to New York General Municipal Law § 50-h on June 12, 2013.

9. Plaintiffs Ramsay offered to attend an oral examination pursuant to § 50-h, but the City did not schedule it.

10. Plaintiffs have duly complied with all conditions precedent to the commencement of this action.

## THE PARTIES

11. Plaintiff IDRIS PAYNE ("Payne") is a citizen and resident of the State of New York and of the United States, and resides within the Southern District of New York.

12. Plaintiff RASFA RAMSAY ("Ramsay") is a citizen and resident of the State of New York and of the United States, and resides within the Southern District of New York.

13. Plaintiff PETER VLASTARAS ("Vlastaras") is a citizen and resident of the State

of New York and of the United States, and resides within the Southern District of New York.

14.   Defendant CITY OF NEW YORK ("Defendant City" or "the City") is a municipal corporation existing by virtue of the laws of the State of New York.

15.   Defendant PATRICK AGOBABE ("AGOBABE") was at all relevant times an officer employed by the New York City Police Department ("NYPD"), acting within the scope of his authority and under color of State law. He is named here in his individual and official capacities.

16.   Defendant KAHN (first name presently unknown) ("KAHN") was at all relevant times a sergeant employed by the NYPD, acting within the scope of his authority and under color of State law. He is named here in his individual and official capacities.

17.   Defendants JOHN DOE Nos. 1 through 10 were at all relevant times officers and/or supervisors employed by the NYPD, acting within the scope of their authority and under color of State law. They are named here in their individual and official capacities.

## THE FACTS

18.   At approximately 8 p.m. on December 25, 2012, the Plaintiffs met each other at the apartment of Payne's brother, Khary, at 92nd Street and Columbus Avenue. The Plaintiffs spent the next several hours with Khary at his apartment playing video games and watching television.

19.   The Plaintiffs left Khary's apartment at approximately 11 p.m that evening. After leaving the apartment building, Plaintiffs walked directly across 92nd Street to Ramsay's car, which had been parked outside since Ramsay arrived.

20.   A police cruiser then rounded the corner of 92nd Street and Columbus Avenue and stopped in front of Plaintiffs. Three police officers, Defendants AGOBABE and JOHN

DOE Nos. 1 and 2, exited the police vehicle.

21. Upon information and belief, the officers were responding to a report of an assault and robbery that had just occurred in the subway station at 96th Street and Central Park West.

22. As they approached Plaintiffs on 92nd Street, the officers received a radio message with the description of the robbers.

23. The radio transmission was audible to the Plaintiffs and the officers.

24. According to the radio dispatcher, the robbery victim described the perpetrators as three black men, one wearing a blue jacket, another wearing tan boots, and the third wearing camouflage pants.

25. They had allegedly stolen the victim's iPhone and his yellow backpack.

26. Plaintiffs did not fit these descriptions. Vlastaras is white, while the Plaintiffs were wearing black sneakers and black coats.

27. Even though Plaintiffs obviously were not the perpetrators, JOHN DOE No. 1 began to question the Plaintiffs and asked if they had any "electronics" on them.

28. Plaintiffs responded that they had their personal cell phones with them.

29. Upon hearing this, the officers grabbed Plaintiffs, turned them around, and ordered them to place their hands on the hood of Ramsay's car. Plaintiffs complied.

30. The officers then began rifling through the Plaintiffs' pockets, but found only the Plaintiffs' personal cell phones and wallets.

31. Plaintiffs told the officers the phones were their own, and gave the officers their phone numbers so they could call the phones to confirm this.

32. The officers refused to do so.

33. The officers then asked Plaintiffs where they were coming from.

4

34. Payne responded that they had just left his brother's apartment across the street and had been there for the past few hours.

35. Payne told the officers they could call his brother or check with the building's doorman, sign-in sheet, or surveillance video to confirm this.

36. The officers refused to do so.

37. Knowing the crime had been committed in the subway, the officers then asked the Plaintiffs whether they had MetroCards with them.

38. Plaintiffs responded that they did not.

39. This was demonstrably true, since none of the wallets the police recovered from the Plaintiffs contained a MetroCard.

40. While the officers questioned Plaintiffs, two other police vehicles, carrying additional officers, including Defendant KAHN, arrived at the scene.

41. JOHN DOE No. 2 then noticed a solid black backpack inside Ramsay's car.

42. Even though Ramsay's backpack did not match the description of the yellow one taken from the robbery victim, the officers ordered Plaintiffs to place their hands behind their backs.

43. Plaintiffs complied.

44. AGOBABE and JOHN DOE Nos. 1 and 2 placed the Plaintiffs in handcuffs.

45. The officers then searched Ramsay's car and backpack.

46. They found no contraband.

47. Nevertheless, KAHN ordered AGOBABE to place Vlastaras in one police car, and Payne and Ramsay in another.

48. By this time, the victim of the robbery had arrived at the scene with more police

officers. JOHN DOE No. 3 walked the victim to the car holding Payne and Ramsay, shone a flashlight in their faces, and asked the victim whether they were the men who had robbed him.

49. The victim unequivocally told JOHN DOE No. 3 that Payne and Ramsay *were not the perpetrators.*

50. JOHN DOE No. 3 then walked the victim to the police car holding Vlastaras. The victim told JOHN DOE No. 3 that he could not positively identify Vlastaras, who is white, as one of the perpetrators, whom he had described as black.

51. KAHN then authorized AGOBABE to arrest Plaintiffs.

52. Plaintiffs were thereafter taken to the NYPD's Transit Bureau, District 3, in Manhattan, and placed in holding cells.

53. There, Plaintiffs again asked AGOBABE to call Payne's brother to verify the Plaintiffs' alibi.

54. AGOBABE again refused.

55. At approximately midnight, an officer at the Transit Bureau precinct was overhead telling AGOBABE, in substance, that he should let Plaintiffs go, as they obviously were not the perpetrators.

56. In response, AGOBABE told the officer that he would not release the Plaintiffs.

57. AGOBABE then said, in words or in substance, that he didn't mind taking the overtime hours, because he had to put a new roof on his house.

58. AGOBABE held Plaintiffs at the Transit Bureau precinct until approximately 11 a.m. on December 26.

59. At that time, AGOBABE put Plaintiffs in shackles and led them to a police van.

60. AGOBABE then drove Plaintiffs to Manhattan Criminal Court at 100 Centre

Street.

61. AGOBABE kept Plaintiffs shackled and standing in the van for the next *six hours*, in the freezing cold.

62. At approximately 5 p.m. on December 26, AGOBABE informed Plaintiffs they would be speaking with an Assistant District Attorney.

63. Plaintiffs then met one-by-one with the ADA inside 100 Centre Street.

64. The ADA recorded the interviews on videotape.

65. At approximately 6 p.m., the Plaintiffs were informed that the ADA was declining to prosecute them and that they would be released immediately.

66. The ADA told AGOBABE that he would not prosecute the Plaintiffs and that they should be released.

67. Nevertheless, AGOBABE again placed the Plaintiffs in shackles and led them to Central Booking, where they were processed.

68. Plaintiffs were then placed in a holding cell until approximately 10 p.m.

69. At that time, a court officer in the arraignment part at 100 Centre Street called the Plaintiffs' names.

70. The court officer led the Plaintiffs through the courtroom and out of the building.

71. The officer told the Plaintiffs they were being released.

72. The Plaintiffs were never brought before a judge, never arraigned, never given the opportunity to speak with an attorney, and never charged with *any* crime.

## FIRST CAUSE OF ACTION

(False arrest, 42 U.S.C. § 1983; the Police Defendants)

73. Plaintiffs repeat and re-allege each and every allegation contained in ¶¶ 1 through 72 above.

74. At all times mentioned herein, the Police Defendants were acting under color of State law.

75. Acting individually and in concert, the Police Defendants deprived Plaintiffs of theirs right under the Fourth and Fourteenth Amendments to the United States Constitution to be free of unreasonable search and seizure and to their liberty by searching, arresting, confining, causing the confinement, and/or continuing the confinement of Plaintiffs without any privilege whatsoever.

76. Plaintiffs were conscious of their confinement.

77. Plaintiffs did not consent to their confinement.

78. The Police Defendants each deprived Plaintiffs of their rights intentionally, knowingly, wilfully, or recklessly.

## SECOND CAUSE OF ACTION

(False arrest, New York State tort law; all Defendants)

79. Plaintiffs repeat and re-allege each and every allegation contained in ¶¶ 1 through 78 above.

80. The Police Defendants, individually and in concert, arrested, confined, caused the confinement, and/or continued the confinement of Plaintiffs without any privilege whatsoever, with the intent to confine, or to cause the confinement of, Plaintiffs.

81. Plaintiffs were conscious of their confinement.

82. Plaintiffs did not consent to their confinement.

83. Defendant City of New York is liable under the principle of *respondeat superior*.

## DAMAGES DEMAND

WHEREFORE, each Plaintiff demands judgment against the Defendants as follows:

a. For compensatory damages of not less than $500,000;

b. For punitive damages against the individual Defendants;

c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

d. For pre-judgment interest as allowed by law; and

e. For such other and further relief as this Court may deem just and proper.

Dated: New York, New York
March 14, 2014

LAW OFFICES OF JOEL B. RUDIN

_____
JOEL B. RUDIN, ESQ.
200 West 57th Street, Suite 900
New York, New York 10019
(212) 752-7600
Email: jbrudin@aol.com

KLIEGERMAN & JOSEPH LLP

_____
RONALD E. KLIEGERMAN, ESQ.
80 Broad Street, 24th Floor
New York, New York 10004
(212) 964-2500
Email: kliegermanjoseph@gmail.com

*ATTORNEYS FOR PLAINTIFFS*

To: Corporation Counsel of the City of New York
All Defendants