UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RASFA RAMSAY and PETER VLASTARAS,

                Plaintiffs,

-against-

THE CITY OF NEW YORK, PATRICK ALMONOR, SUJAT KHAN, DANIEL RIERA, JULIO SANTIAGO, and SANTIAGO PERALTA,

                Defendants.

------------------------------------------------------------X

14 Civ. 1805 (GBD) (JCF)

**SECOND AMENDED COMPLAINT**

**Jury Trial Demanded**

      Plaintiffs RASFA RAMSAY and PETER VLASTARAS (collectively, "Plaintiffs"), by their attorneys, the LAW OFFICES OF JOEL B. RUDIN, P.C., and KLIEGERMAN & JOSEPH LLP, complaining of the Defendants, respectfully allege, upon information and belief, as follows:

## NATURE OF ACTION

      1.    This is a civil action, pursuant to 42 U.S.C. §§ 1983 and 1988, and state law, seeking monetary damages for Plaintiffs, RASFA RAMSAY and PETER VLASTARAS, for their false arrest and for the use against Plaintiff RAMSAY of unconstitutionally excessive force.

      2.    On Christmas night, 2012, Defendants PATRICK ALMONOR, SUJAT KHAN, DANIEL RIERA, JULIO SANTIAGO and SANTIAGO PERALTA (collectively, "the Police Defendants") responded to reports of an assault and robbery on the subway near West 96th Street in Manhattan. The victim of the crime described his attackers as three black youths

wearing various articles of clothing, which he also described. Defendants SANTIAGO and PERALTA, aware of this description, stopped, detained, and searched Plaintiffs – including VLASTARAS, who is white – even though they clearly did not fit the descriptions, and thus without any lawful reason. Even though SANTIAGO and PERALTA discovered no contraband or any evidence linking Plaintiffs to the robbery and assault, Defendants KHAN, RIERA and ALMONOR then placed Plaintiffs in a showup for the robbery victim, who told the officers that he did not recognize Plaintiffs as the perpetrators. Despite this, and even though Plaintiffs obviously did not match the victim's description of the robbers, KHAN ordered the Plaintiffs' arrests. Thereafter, ALMONOR, who had forcefully pushed Plaintiff RAMSAY, handcuffed behind his back, into a patrol car, then repeatedly refused to loosen RAMSAY's handcuffs when he complained about being in severe pain. As a result, RAMSAY suffered substantial and permanent nerve damage to his right wrist which has made it virtually impossible for him to work.

3.      Knowing that the arrest was illegal, ALMONOR became the Plaintiffs' "arresting officer" because, as he was heard to explain it, he needed the "overtime." ALMONOR held Plaintiffs in custody throughout the night and into the next day. The New York County District Attorney's Office then interviewed each Plaintiff, declined to prosecute them for any crime, and directed ALMONOR to release them from custody. Rather than release Plaintiffs, however, ALMONOR brought them to Manhattan Central Booking to be processed and went off duty. Plaintiffs were held in custody for several additional hours before they were finally released on the evening of December 26, 2012, after having been in custody approximately 20 hours. They now seek damages from the Defendants for their egregious, unlawful behavior.

## JURISDICTION AND VENUE

4.   This action arises under 42 U.S.C. §§ 1983 and 1988, and under the common law of the State of New York.

5.   Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343, and by the principles of pendent jurisdiction.

6.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

7.   This action was commenced within one year and ninety days of the accrual of Plaintiffs' causes of action.

8.   On or about March 12, 2013, Plaintiffs served the City of New York timely notice of the present claims pursuant to New York General Municipal Law § 50-c.

9.   Plaintiff VLASTARAS attended oral examinations pursuant to New York General Municipal Law § 50-h on June 12, 2013.

10.  Plaintiff RAMSAY offered to attend an oral examination pursuant to § 50-h, but the City did not schedule it.

11.  Plaintiffs have duly complied with all conditions precedent to the commencement of this action.

## THE PARTIES

12.  Plaintiff RASFA RAMSAY ("RAMSAY") is a citizen and resident of the State of New York and of the United States, and resides in the Southern District of New York.

13.  Plaintiff PETER VLASTARAS ("VLASTARAS") is a citizen and resident of the State of New York and of the United States, and resides in the Southern District of New York.

14.  Defendant CITY OF NEW YORK ("Defendant City" or "the City") is a municipal corporation existing by virtue of the laws of the State of New York.

15. Defendant PATRICK ALMONOR ("ALMONOR"), Shield No. 4532, was at all relevant times an officer employed by the New York City Police Department ("NYPD"), acting within the scope of his authority and under color of State law. He is named here in his individual and official capacities.

16. Defendant SUJAT KHAN ("KHAN") was at all relevant times a sergeant employed by the NYPD, acting within the scope of his authority and under color of State law. He is named here in his individual and official capacities.

17. Defendant DANIEL RIERA ("RIERA") was at all relevant times an officer employed by the NYPD, acting within the scope of his authority and under color of State law. He is named here in his individual and official capacities.

18. Defendant JULIO SANTIAGO ("SANTIAGO") was at all relevant times an officer employed by the NYPD, acting within the scope of his authority and under color of State law. He is named here in his individual and official capacities.

19. Defendant SANTIAGO PERALTA ("PERALTA") was at all relevant times an officer employed by the NYPD, acting within the scope of his authority and under color of State law. He is named here in his individual and official capacities.

## THE FACTS

20. At approximately 8 p.m. on December 25, 2012, the Plaintiffs and their friend Idris Payne ("Payne") met each other at the apartment of Payne's brother, Khary, at 92nd Street and Columbus Avenue. Plaintiffs and Payne spent the next several hours with Khary at his apartment playing video games and watching television.[1]

---

[1] Mr. Payne, who was arrested with RAMSAY and VLASTARAS on December 25, 2012, previously was a plaintiff in this matter but settled his claims in November 2014.

21. The Plaintiffs and Payne left Khary's apartment at about 11 p.m. After leaving the apartment building, Plaintiffs and Payne walked directly across 92nd Street to RAMSAY's car, which had been parked on the street since RAMSAY arrived.

22. A police cruiser then stopped in front of Plaintiffs and Payne. Two police officers, Defendants SANTIAGO and PERALTA, exited the police vehicle.

23. The officers were responding to a report of an assault and robbery that had just occurred in the subway station at 96th Street and Central Park West.

24. The officers received a radio message with the description of the robbers.

25. The radio transmission was audible to the Plaintiffs and the officers.

26. According to the radio dispatcher, the robbery victim described the perpetrators as three black youths, one wearing a blue jacket, another wearing tan boots, and the third wearing camouflage pants.

27. They allegedly had stolen the victim's iPhone and his yellow backpack.

28. Plaintiffs and Payne did not fit the victim's descriptions. VLASTARAS is white, while the Plaintiffs and Payne were wearing black sneakers and black coats. Moreover, at the time, RAMSAY was 34 years old, VLASTARAS was 31, and Payne was 29.

29. Even though they had no cause to reasonably suspect Plaintiffs and Payne of being the perpetrators, SANTIAGO and PERALTA forcibly detained Plaintiffs and Payne and began to question them, asking if they had any "electronics."

30. Plaintiffs and Payne responded that they had their personal cell phones with them.

31. Upon hearing this, and continuing to act without reasonable suspicion, the officers grabbed Plaintiffs and Payne, turned them around, and ordered them to place their hands on the hood of RAMSAY's car. The men complied.

32. The officers then began rifling through the Plaintiffs' and Payne's pockets, but found only their personal cell phones and wallets.

33. Plaintiffs and Payne told the officers the phones were their own, and gave the officers their phone numbers so they could call the phones to confirm this.

34. The officers refused to do so.

35. The officers then asked Plaintiffs and Payne where they were coming from.

36. Payne responded that they had just left his brother's apartment across the street and had been there for the past few hours.

37. Payne told the officers they could call his brother or check with the building's doorman or surveillance video to confirm this.

38. The officers refused to do so.

39. Knowing the crime had been committed in the subway, the officers then asked the Plaintiffs and Payne whether they had MetroCards with them.

40. Plaintiffs and Payne responded that they did not.

41. This was demonstrably true, since none of the wallets the police recovered from the Plaintiffs and Payne contained a MetroCard.

42. Moreover, RAMSAY had received a parking ticket while he was at Khary's apartment. When RAMSAY asked the officers to inspect the ticket's time stamp, which would have shown RAMSAY's car had been parked on the street since before the incident, and tended to corroborate that they had been at Khary's apartment across the street, just like they said, the officers refused.

43. While the officers continued to question and to unlawfully detain Plaintiffs and Payne, additional police vehicles, carrying additional officers, including Defendants KHAN,

ALMONOR and RIERA, arrived at the scene.

44. The officers unlawfully searched RAMSAY's car without any probable or reasonable cause and without a search warrant, where they found no contraband, or any evidence connecting Plaintiffs and Payne to the assault and robbery. They found only RAMSAY's black backpack.

45. ALMONOR, SANTIAGO and PERALTA, still acting in the absence of any reasonable suspicion or probable cause, placed Plaintiffs and Payne in handcuffs, behind their backs.

46. VLASTARAS was placed in the back of one police car, and RAMSAY and Payne were placed in the back seat of another.

47. ALMONOR used force to push RAMSAY into the back seat of the police vehicle.

48. This caused the full weight of RAMSAY's body to fall on his hands, which were cuffed behind his back, causing significant pain in RAMSAY's right wrist and hand.

49. RAMSAY remained handcuffed, in significant pain, for a substantial period of time.

50. During that time, RAMSAY repeatedly asked ALMONOR to loosen his handcuffs because he was in pain.

51. ALMONOR, knowing RAMSAY was in pain, refused.

52. ALMONOR's use of force against RAMSAY, as well as his failure to loosen RAMSAY's handcuffs despite his knowledge that they were too tight, caused RAMSAY to suffer substantial nerve damage in his right wrist and hand.

53. At about the time Plaintiffs and Payne were placed in the police cars, the victim

of the robbery had arrived at the scene with more police officers. The Police Defendants showed RAMSAY's backpack to the victim, who told the officers it was not his.

54. The victim was brought to the car holding Payne and RAMSAY.

55. In the presence of ALMONOR, KHAN, and the other officers, the victim unequivocally said that Payne and RAMSAY *were not the perpetrators*.

56. The victim also was brought to the car holding VLASTARAS.

57. In the presence of ALMONOR, KHAN, and the other officers, the victim said that he could not identify VLASTARAS, who is white, as one of the perpetrators, whom he had described as black.

58. Notwithstanding the absence of any identification or any other evidence that Plaintiffs and Payne committed the robbery, KAHN ordered ALMONOR and RIERA to formally arrest Plaintiffs and Payne, which they did.

59. Plaintiffs and Payne were thereafter taken to the NYPD's Transit Bureau, District 3, in Manhattan, and placed in holding cells.

60. After arriving at the Transit Bureau, ALMONOR agreed to act as the "arresting officer."

61. At approximately midnight, an officer at the Transit Bureau precinct was overhead telling ALMONOR, in substance, that he should let Plaintiffs and Payne go, as they obviously were not the perpetrators.

62. In response, ALMONOR told the officer that he would not release the Plaintiffs and Payne.

63. ALMONOR said that he needed to make overtime money in order to put a new roof on his house.

64. Also at the Transit Bureau, Plaintiffs and Payne again asked ALMONOR to call Payne's brother to verify the Plaintiffs' and Payne's alibi.

65. ALMONOR again refused.

66. ALMONOR held Plaintiffs and Payne at the Transit Bureau precinct until approximately 10 a.m. on December 26.

67. ALMONOR put Plaintiffs and Payne in shackles and led them to a police van.

68. ALMONOR and a fellow officer drove Plaintiffs and Payne to Manhattan Criminal Court at 100 Centre Street.

69. ALMONOR kept Plaintiffs and Payne shackled and standing in the van for approximately *four hours*, in the freezing cold.

70. At approximately 2 p.m. on December 26, ALMONOR informed Plaintiffs and Payne they would be speaking with an Assistant District Attorney ("ADA").

71. Payne and the Plaintiffs then met one by one with the ADA inside 100 Centre Street, in ALMONOR's presence.

72. They told the ADA they had not been identified, did not fit the description of the assailants broadcast by the police, were completely innocent, and had been in Kary Payne's apartment when the crime occurred.

73. ALMONOR at no point disputed Payne's or Plaintiffs' statements or defended his conduct in arresting and processing them. He was unable to explain to the ADA the basis for the Plaintiffs' arrest, as there was no basis.

74. At approximately 4 p.m., the ADA told ALMONOR that he would not prosecute the Plaintiffs and Payne and that they should be released.

75. Nevertheless, ALMONOR again placed the Plaintiffs and Payne in shackles and

led them to Central Booking, where they were processed.

76. Without releasing his prisoners, ALMONOR left Central Booking and, shortly afterwards, went off duty.

77. Plaintiffs and Payne were detained until approximately 7:00 p.m.

78. At that time, a court officer in the arraignment part at 100 Centre Street called the Plaintiffs' and Payne's names.

79. The court officer led the Plaintiffs and Payne through the courtroom and out of the building.

80. The officer told the Plaintiffs and Payne they were being released.

81. The Plaintiffs and Payne were never brought before a judge, never arraigned, never given the chance to speak with an attorney, and never formally charged with *any* crime.

## FIRST CAUSE OF ACTION

(False arrest, 42 U.S.C. § 1983; the Police Defendants)

82. Plaintiffs repeat and re-allege each and every allegation contained in ¶¶ 1 through 81 above.

83. At all times mentioned herein, the Police Defendants were acting under color of State law.

84. Acting individually and in concert, the Police Defendants deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free of unreasonable search and seizure and to their liberty by detaining, searching, arresting, confining, causing the confinement, and/or continuing the confinement of Plaintiffs without any privilege to do so.

85. Plaintiffs were conscious of their confinement.

86. Plaintiffs did not consent to their confinement.

87. The Police Defendants each deprived Plaintiffs of their rights intentionally, knowingly, wilfully, recklessly, and/or with deliberate indifference to the lawfulness of their conduct.

## SECOND CAUSE OF ACTION

(False arrest, New York State tort law; all Defendants)

88. Plaintiffs repeat and re-allege each and every allegation contained in ¶¶ 1 through 87 above.

89. The Police Defendants, individually and in concert, detained, arrested, confined, caused the confinement, and/or continued the confinement of Plaintiffs without any privilege to do so, with the intent to confine, or to cause the confinement of, Plaintiffs.

90. Plaintiffs were conscious of their confinement.

91. Plaintiffs did not consent to their confinement.

92. Defendant CITY OF NEW YORK is liable under the principle of *respondeat superior*.

## THIRD CAUSE OF ACTION

(Excessive Force, 42 U.S.C. § 1983; Defendant ALMONOR)

93. Plaintiffs repeat and re-allege each and every allegation contained in ¶¶ 1 through 92 above.

94. ALMONOR intentionally used physical force against RAMSAY.

95. The amount of force ALMONOR used against RAMSAY was excessive and caused and/or exacerbated serious injury to RAMSAY.

96. The amount of force used by ALMONOR was objectively unreasonable.

11

97.     RAMSAY did not consent to the excessive physical contact by ALMONOR, and ALMONOR lacked any legal justification, excuse, or privilege for his conduct.

98.     By virtue of the foregoing, ALMONOR deprived RAMSAY of his right under the Fourth and Fourteenth Amendments to the United States Constitution to be free of the excessive use of force.

99.     ALMONOR deprived RAMSAY of his rights intentionally, wilfully, or recklessly.

## DAMAGES DEMAND

WHEREFORE, each Plaintiff demands judgment against the Defendants as follows:

a.  For compensatory damages of not less than $500,000;

b.  For punitive damages against the individual Defendants;

c.  For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

d.  For pre-judgment interest as allowed by law; and

e.  For such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        December 16, 2015

                                        LAW OFFICES OF JOEL B. RUDIN, P.C.

                                        _____
                                        JOEL B. RUDIN, ESQ.
                                        600 Fifth Avenue, Tenth Floor
                                        New York, New York 10020
                                        (212) 752-7600
                                        Email: jbrudin@rudinlaw.com

        KLIEGERMAN & JOSEPH LLP

        _____
        RONALD E. KLIEGERMAN, ESQ.
        80 Broad Street, 24th Floor
        New York, New York 10004
        (212) 964-2500
        Email: kliegermanjoseph@gmail.com

        *ATTORNEYS FOR PLAINTIFFS*

To:    Corporation Counsel of the City of New York
       All Defendants